**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| CARL STEPHEN COBERLEY as the Representative of the ESTATE of KATHY COBERLEY, Plaintiff, | § | |
| v. | § | CASE NO. 4:07cv226 |
| NORTH CENTRAL TEXAS COLLEGE, Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant's Amended Motion for Summary Judgment (Dkt. 31). Having reviewed the summary judgment record, the arguments of counsel, and the governing authority, the Court finds that the motion should be **GRANTED.**

This suit involves claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq. When it was initially filed, Plaintiff was Kathy Coberley, a nursing instructor who was formerly employed by Defendant North Central Texas College. During the pendency of this suit, however, Kathy Coberley was killed in an automobile accident, and the Court permitted her husband, Carl Stephen Coberley, to substitute in as the representative of her estate.[1]

---

[1]The Court notes that Defendant does not challenge Mr. Coberley's standing to bring this suit under the ADA, and the Court can find no authority directly on point in this Circuit as to the scope of the survivability of Kathy Coberley's ADA claims. However, as one Court has recently noted, "[t]here is authority allowing the personal representative of a deceased former employee to pursue employment discrimination claims on behalf of the decedent's estate." *Collins v. OSF Healthcare Sys.*, 262 F. Supp.2d 959, 962 (C.D. Ill. 2003) (citing *Collins v. Village of*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc*., 76 F.3d 651, 655 (5th Cir. 1996).

---

*Woodridge,* 96 F. Supp.2d 744 (N.D. Ill. 2000); *Pueschel v. Veneman,* 185 F. Supp.2d 566 (D. Md. 2002); *Kulling v. Grinders for Indust., Inc.,* 115 F. Supp.2d 828 (E.D. Mich. 2000)). Because it has not been challenged and because Plaintiff only appears to be bringing claims on behalf of the estate, and not himself individually, the Court has assumed he has standing for purposes of this motion.

In response, the nonmovant's motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

## ANALYSIS

Prior to addressing the merits of Defendant's motion, the Court first addresses a procedural matter raised by Defendant. Plaintiff's summary judgment response – along with Plaintiff's summary judgment evidence – was not filed timely. The Court notes that the record contains no explanation from Plaintiff as to why the summary judgment record was not timely filed. Nonetheless, in the interests of justice, the Court will consider the late-filed evidence to determine whether, even excusing his tardiness, Plaintiff can satisfy his summary judgment burden.

The Court also notes that Defendant has objected to portions of the Declaration of Plaintiff, which Plaintiff attached as part of his summary judgment evidence. The objections are overruled for the purposes of these summary judgment proceedings only. The Court will consider all evidence offered and cited to in determining whether Plaintiff can survive summary judgment.

Plaintiff brings this claim on behalf of the estate of his deceased wife, Kathy Coberley, under the American with Disabilities Act. According to the evidence before the Court, Kathy Coberley had Type 1 diabetes. She was employed from the fall of 2003 until the spring of 2006 as an instructor in Defendant North Central Texas College's Associate Degree of Nursing Program. After a one-semester probation period, Coberley served as an instructor under one-year term contracts which were, according to Defendant's evidence, renewed annually at the discretion of the college. Coberley's last contract with the college – for the 2005-2006 school year – contained the following provisions:

> 2. That the Professional Employee shall perform assigned duties to meet the college's expectations of that position...
>
> 10. The this contract is only for the term set forth in Paragraph 1-A, that it does not grant tenure rights with respect to employment by the College, is not renewable as a matter of right, and that the issuance of letters of intent regarding renewal are not contractual and are not binding on the parties until and unless a contract is actually offered and signed.

Coberley's contract was not renewed for the 2006-2007 school year. Plaintiff argues in this suit that this employment decision was based on Kathy Coberley's perceived disability of diabetes and was in violation of the ADA.

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 476 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). To prevail on an ADA claim, a

plaintiff must first demonstrate that: (1) he has a "disability"; (2) he is "qualified" for the job; and (3) he experienced an adverse employment decision because of his disability. *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092 (5th Cir. 1996) (citing *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 763 (5th Cir. 1996)). "Once the plaintiff makes his *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 280 (5th Cir. 2000). After the employer articulates such a reason, the burden then shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination. *Id.* Discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the employer's decision making process and have a determinative influence on the outcome. *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008).

**Disabled or Perceived Disabled**

In examining the first three prongs of a prima facie case of ADA discrimination, the parties' main focus in this case appears to be whether Kathy Coberley was disabled or regarded as disabled. The diagnosis of diabetes does not, in and of itself, render an individual disabled. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119, 2139 (1999) (superceded by statute on other grounds); *E.E.O.C. v. Agro Distrib. LLC*, __ F. 3d __, 2009 WL 95259, 5 (5th Cir. 2009). Therefore, the determination of whether diabetes is considered a "disability" under the ADA is an individualized analysis made under the facts and circumstances of each case. *Id.*

Plaintiff here does not seek to prove that Kathy Coberley's diabetes was actually a disability; rather, Plaintiff brings his claim under the "regarded as disabled" analysis. Under the ADA, an

individual is regarded as disabled if she: (1) has an impairment which is not substantially limiting but which the employer perceives as substantially limiting; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment. *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 475 (5th Cir. 2006). Plaintiff has the burden to show that Kathy Coberley was regarded as disabled by the college. *Id.*

In this case, Plaintiff has not satisfied his summary judgment burden in offering evidence to show that Defendant considered Kathy Coberley's diabetes to substantially limit any of her major life activities. It is not clear to the Court where in the summary judgment record Plaintiff has pointed to evidence of Coberley's perceived disability. Indeed, Plaintiff has not pointed the Court to any evidence that officials at the college perceived Kathy Coberley to be limited; quite to the contrary, the college's repeated attempts at working with Kathy Coberley to address her performance issues indicate that Defendant perceived her as being capable of performing her job duties and all major life activities despite her diagnosis of diabetes, assuming she monitored it. *See also Arrington v. Southwestern Bell Telephone Co.,* 93 Fed. Appx. 593, 598, (5th Cir. 2004) ("Thus, because he does not claim that he was incapable of performing a range of jobs due to his diabetes, Arrington has not demonstrated that he has either a disability or a record of impairment under the ADA."). Further, whatever Defendant's perceptions were about Kathy Coberley's ability to speak and communicate, stay awake and stand and walk – all of which the Court agrees could be regarded as major life activities – Plaintiff has not pointed to any evidence in the record to show that Defendant believed these limitations to be *substantially limiting* in nature. Such substantial limitation is part of the

"regarded as disabled" analysis. *See Rodriguez*, 436 F.3d at 475. Therefore, in light of the record before it, the Court finds that Plaintiff has not sustained his summary judgment burden in showing that Defendant regarded Kathy Coberley as disabled.

**Non-discriminatory reason**

Further, even assuming Plaintiff had shown evidence that Kathy Coberley was regarded as disabled and therefore could establish a *prima facie* case of an ADA violation, the Court finds that Defendant has articulated non-discriminatory reasons for not renewing Kathy Coberley's contract. Defendant's reasons for not renewing the contract were poor performance and safety concerns. The summary judgment record is rife with evidence to support these reasons.

Specifically, Plaintiff's own summary judgment evidence contains a lengthy file documenting Defendant's supervisor's concerns regarding Kathy Coberley's job performance. According to this evidence, Defendant had concerns as early as 2004 regarding Kathy Coberley's performance as an instructor. These performance issues included arriving late for class, missing classes, dependability, not being prepared for class, keeping students after hours, an allegation of inappropriate touching, and poor student reviews. The record documents numerous meetings between Kathy Coberley and college administrators to address these performance concerns.

From the evidence before the Court, it is undisputed that Kathy Coberley's supervisors addressed their concerns with her through both formal and informal review processes, including the issuance of growth plans. In these growth plans, goals were set goals for Coberley to address in order for Defendant to be satisfied with her performance.

The last growth plan issued by Defendant required Kathy Coberley to "improve her health status and not exhibit symptoms during classroom teaching and clinicals such as: slurred speech, confusion, uncoordinated movements/ambulation, nodding off, falling asleep or appearance of falling asleep, eyelids closing rolling back." Other requirements of the growth plan included better organization, more professional interaction with students, etc.

The record indicates that Ms. Coberley did not respond to the growth plan instituted for her by the college to its satisfaction. Such performance expectations were part of her contractual agreement with Defendant, which, as noted above, required her to perform her assigned duties to meet the college's expectations of that position.

The Court notes that the evidence before it indicates that some of the college's performance allegations regarding Kathy Coberley deal with her falling asleep, nodding off, or seeming confused– all of which could be related to her diabetes (although the Court notes that Plaintiff never states with certainty that they were). Of particular concern to the college were apparently the safety implications of having a nursing instructor in a clinical setting fall asleep or pass out during a laboratory demonstration. *Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 388, (5th Cir. 2008) ("[C]ourts have repeatedly approved of ADA-challenged discharges for falling asleep at work, particularly in safety-sensitive positions.").

The Court finds Defendant's safety concerns to be legitimate and non-discriminatory. In fact, the Fifth Circuit has affirmed the grant of summary judgment in a case where a plaintiff's on-the-job hypoglycemic incidents (including disorientation and passing out, like that reflected in the record here) made it unsafe for him to do his job, regardless of any accommodations. *See Burden v.*

*Southwestern Bell Telephone Co.*, L.P. 183 Fed. Appx. 414, 415-416 (5th Cir. 2006) (affirming district court finding that terminated plaintiff with diabetes had failed to establish a prima facie case under the ADA). Although the parties' focus in that case was on the "qualified individual" prong of the ADA analysis, the Court finds the concerns raised by the Fifth Circuit to be persuasive here.[2]

Further, the fact that the school raised general concerns about Kathy Coberley's health does not necessarily make the reasons for her termination discriminatory. *See, e.g., Siefken v. Village of Arlington Heights*, 65 F.3d 664 (7th Cir. 1995) (terminating an employee for actions resulting from failure to monitor diabetes does not rise to the level of an ADA violation). As another court in the Fifth Circuit has noted in cases of alcoholism:

> The Court finds an important distinction between discharging an employee for unacceptable misconduct and discharging an employee because of a disability....The violation of Plaintiff's Return to Work Agreement constitutes misconduct sufficient to terminate his employment, even if that misconduct was related to his alcoholism. The Plaintiff voluntarily entered into the Return to Work Agreement, fully understanding its terms and conditions... [T]he Plaintiff was terminated because he breached that Agreement, not because of he is an alcoholic. To attribute the termination to Plaintiff's alcoholism ignores an important element of this case. The Return to Work Agreement itself was a reasonable attempt to accommodate the Plaintiff's alleged disability.

*McKey v. Occidental Chemical Corp*., 956 F. Supp. 1313, 1319 (S.D. Tex. 1997). Although this case involves diabetes and not alcoholism, the Court finds the argument persuasive in its distinction between termination for misconduct and termination for disability. In this case, the growth plans

---

[2]In this regard, although it does not appear to be raised by Defendant in its briefing, the Court also questions whether Plaintiff could sustain his burden of proof in showing that Kathy Coberley was qualified to safely perform her job as that has been interpreted by the Fifth Circuit.

clearly set out performance goals for Kathy Coberley. The summary judgment record supports Defendant's contention that she was informed of and consented to the goals set forth in the plans but failed to meet them to Defendant's satisfaction. Defendant's satisfaction was a term of the employment agreement, and there is no summary judgment evidence or argument before the Court to indicate that such provision should not be enforced. Here, the evidence shows that Kathy Coberely's poor performance (which the Court assumes was at least in part due to her failure to monitor her diabetes) – not her diabetes itself – was the factor that actually played a role in Defendant's decision and had a determinative influence on the determination of non-renewal.

Moreover, the summary judgment record contains un-rebutted sworn testimony from the dean of the college that Kathy Coberley was not terminated because of her health, but ultimately because of instructional and performance issues. Likewise, Dr. Hadlock, the school's president, testified that Kathy Coberley's contract was not renewed because she was not "providing the instruction that we needed in the nursing program." *See* Depo of Dr. Hadlock, the school's president, at page 24. In light of this evidence and the record before it, the Court finds that Defendant has satisfied its summary judgment burden of showing a non-discriminatory reason for not renewing Coberley's contract.

**Pretext**

With Defendant's burden satisfied, the baton is passed back to Plaintiff to offer summary judgment evidence showing that Defendant's reasons were false or pretextual. Plaintiff has not made such a showing here. The Court notes that Plaintiff included in the record some handwritten notes that were purportedly made by Kathy Coberley. Plaintiff does not, however, show how these notes

create a genuine issue of material fact that the college's reasons for non-renewal are pretextual. Even though the Court has overruled Defendant's evidentiary objections to the handwriting, Plaintiff has not stated what the handwriting (which is often illegible) purportedly says, nor has Plaintiff specifically shown how those purported statements by Kathy Coberley show pretext.

In this regard, the Court notes that despite the clear requirement in the procedural rules, Plaintiff frequently fails to cite to specific evidence when making arguments in his summary judgment response. Rather, Plaintiff attaches a voluminous record of more than 190 pages, including entire deposition transcripts, and has not made "appropriate citations" to the summary judgment evidence as is required by Local Court Rule CV-56(d). *See* E.D. TEX. L. R. CV-56(d) ("The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be ***referred to by page and, if possible***, by line....") (emphasis added).

The Court is not required to scour the record in this matter to determine whether Plaintiff could create a genuine issue of material facts as to each element of his claims. The evidence that the Court has been able to decipher does not create any fact issue, and it declines to try to create one. The non-movant's burden in summary judgment proceedings is clear. *See Ragas*, 136 F.3d at 458; *Stults*, 76 F.3d at 655. The Court's time and resources are limited, and the Court will not do Plaintiff's work for him.

The Court is sympathetic to the diagnosis of diabetes and understands from personal experience its many challenges. However, the Court finds that accepting Plaintiff's summary argument would mean that a person with diabetes could never be terminated for performance-related issues. The Court finds that the ADA analysis set forth by governing Fifth Circuit precedent requires

more. To survive summary judgment, Plaintiff must create a genuine issue of material fact as to each of the elements, including pretext, and he simply has not done so here.

Therefore, Defendant's Amended Motion for Summary Judgment (Dkt. 31) is GRANTED and Plaintiff shall take nothing by his claims here.

**SO ORDERED.**

**SIGNED this 27th day of February, 2009.**

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE